COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-271-CR

 

 

ARTHUR LEE PIERSON, JR.                                                   APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Arthur Lee Pierson,
Jr. appeals his convictions and sentences for four counts of aggravated sexual
assault of a child under fourteen years of age. 
We affirm.  








In 2004, appellant=s former step-daughter B.H. alleged that appellant sexually assaulted
her on three different occasions in October 1999, when she was thirteen years
old.  Each of the three incidents
followed a similar pattern: appellant woke B.H. from her sleep; had sexual
intercourse with her and, on one occasion, oral sex; and then made B.H. go to
the bathroom and give him her underwear. 
Appellant threatened B.H. that he would kill her and other family
members if she told anyone.  Following a
five-day trial, a jury convicted appellant of four counts of aggravated sexual
assault of a child under fourteen years of age and sentenced him to four
ninety-nine year terms of incarceration.[2]  In his
first point, appellant argues that the trial court improperly admitted B.H.=s 2004 statements to sexual assault nurse Donna Duclow over his rule
803(4) objection.[3]









Texas Rule of Evidence 803(4)
contains a hearsay exception for statements made for medical diagnosis or
treatment.[4]  Appellant claims Duclow=s testimony does not fit under this exception.  Where substantially the same evidence
complained of on appeal is received without objection from a different source,
however, an appellant forfeits his complaint regarding admission of the
objectionable testimony.[5]  

Duclow interviewed B.H. on
September 3, 2004 at John Peter Smith Hospital (AJPS@).  As was her practice, she wrote B.H.=s history Aword for
word.@  Over appellant=s hearsay objection, Duclow testified that B.H. stated the following:

$      
The Afirst event@
occurred on October 22, 1999 between 2 and 3 a.m.  Appellant entered B.H.=s
room, woke her, picked her up, placed her on the floor, and had sexual
intercourse with her.  He threatened to
kill her, her sister, or grandmother if she told anyone.  He said he would Apop
[her] cherry.@  Afterwards, appellant told B.H. to get her
underwear and go into the bathroom, and he asked whether she was bleeding.  

 








$      
On October 12, 1999 appellant again woke B.H.
from her sleep in the middle of the night, got her out of her bed, and laid her
down on her floor.  Appellant performed
oral sex on her and then had sexual intercourse with her.  He told her not to tell because her mom and
sister would be mad because appellant paid the bills.  He directed her to go to the bathroom and
took her underwear. 

 

$      
Just before Halloween 1999, appellant again came
and got B.H. from her bed, pushed her toward the living room, and laid her down
there.  He had sexual intercourse with
her, first with appellant on top and then with B.H. in that position.  A woman called AAuntie@ was
sleeping on the couch in the living room. 
Afterwards, B.H. went to the bathroom, and appellant took her underwear.


 

Duclow did not perform a physical examination because Aafter a five-year period any trauma or injury directly related to the
assault [would be] healed, gone, or not visible.@ 

The following day, B.H. testified to the following:

$                                                                                                                              
On October 2, 1999, appellant came into her room
around 2 or 3 a.m., woke her up, took her off her bed, and put her on the
floor. Appellant kissed her on her neck and breast, said he would Apop
her cherry,@ and
asked her if she wanted to be his girlfriend. 
He then had sexual intercourse with her, threatening that if she told
anyone, there would be no one to take care of the family.  After it ended, he pushed her towards the
restroom, told her to give him her underwear, and asked if she was bleeding.     

 

$      
On October 12, 1999, around 3 a.m., appellant
woke B.H. up, picked her up off her bed, and put her on the floor.  He performed oral sex on her and then had
sexual intercourse with her.  He
threatened to kill her, her sister, and her grandmother if she told
anyone.  He then told her to go to the
bathroom and took her underwear. 

 

$      
At the end of October 1999, before Halloween,
around 1 or 2 a.m., appellant woke her up and pushed her into the living room
where a woman she called AAuntie@ was
asleep on the couch.  There appellant had
sexual intercourse with B.H.; at first appellant was on top and then he moved
B.H. to that position.  Afterwards,
appellant had her go to the bathroom and give him her underwear. 








 

Appellant did not object to
any of this testimony. 

After B.H.
described the three occurrences, she explained that she did not immediately
contact the police because of appellant=s threats.[6]  In 2004, after graduating from high school,
she approached a probation officer who directed her to CPS and the police, and
she eventually spoke to sexual assault nurse Duclow.  After the prosecutor asked, AAnd obviously you told [Duclow at JPS] what happened, right?@ appellant attempted to Arenew@ the hearsay
objection he made the day before to Duclow=s testimony. 

The record
indicates that appellant=s objection
referred to the State=s last
question, AAnd
obviously you told [Duclow at JPS] what happened, right?,@ and if the objection was intended to relate back to B.H.=s descriptions of the sexual assaults, it was untimely for that
purpose and did not preserve error as to that testimony.[7]  Thus, appellant did not make a proper
objection to B.H.=s testimony
describing the sexual assaults. 








Duclow and
B.H.=s testimony was very similar. 
Both described sexual assaults appellant perpetrated on B.H. on three
nights in October 1999.[8]  Details such as appellant=s words, the specific sexual actions he performed (and the order
thereof), the locations of the assaults, the presence of Auntie, and appellant=s conduct and demands following each assault were practically
identical.  

Because
appellant did not object to the relevant portions of B.H.=s testimony, and it is substantially the same as what he now complains
about on appeal (Duclow=s
testimony), he forfeited the error, if any, regarding Duclow=s testimony.[9]  We overrule appellant=s first point.








In his
second point, appellant contends that he was denied effective assistance of
counsel under the United States and Texas Constitutions because his trial
counsel opened the door on cross-examination of Detective Mark Pitt to allow
the State to show the jury that appellant was in custody in another county.

To establish
ineffective assistance of counsel, appellant must show by a preponderance of
the evidence that his counsel=s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel=s deficiency, the result of the trial would have been different.[10]  The test for ineffective assistance of trial
counsel is the same under the federal and state constitutions.[11]









A reviewing
court, however, will rarely be in a position on direct appeal to fairly
evaluate the merits of an ineffective assistance claim.[12]  In the majority of cases, the record on direct
appeal is undeveloped and cannot adequately reflect the motives behind trial
counsel=s actions.[13]  To overcome the presumption of reasonable
professional assistance, any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.[14]  It is not appropriate for an appellate court
simply to infer ineffective assistance based upon unclear portions of the
record.[15]









During
cross-examination of Detective Pitt, appellant=s attorney suggested that the detective did not conduct an impartial, Afull and complete@ investigation of B.H.=s allegations before writing an arrest warrant for appellant.  To that end, appellant=s attorney elicited the fact that Detective Pitt did not speak with
the responding officers but only read their report, suggested that the
detective=s training
was not as extensive as it could have been, insinuated that child advocates are
predisposed to believe a child is telling the truth, and questioned the
detective=s failure to
speak to appellant to get his side of the story.  To the last allegation, Detective Pitt
responded, AThere were
reasons.@         Outside the presence of the jury, the State argued that defense
counsel opened the door as to why the detective did not interview
appellant.  The trial court agreed.  With the trial court=s permission, therefore, Detective Pitt testified on redirect that he
did not interview appellant because he learned that appellant was Ain custody in another county,@ and it was not unusual not to travel outside the county to attempt to
speak with a suspect. 

Appellant
acknowledges that the record on direct appeal is usually silent on the question
of trial strategy.  He argues, however,
that the record in this case reflects trial counsel=s mistaken belief that appellant was in the Tarrant County Jail at the
time of the investigation and that this is an error for which no explanation of
trial strategy is needed because appellant=s trial counsel had clearly not conducted a thorough investigation.   








To prevail
on his ineffective assistance point, appellant must prove by a preponderance of
the evidence that there is Ano plausible professional reason for a specific act or omission.@[16]  Indeed, the record shows that
trial counsel appeared to believe appellant was in the Tarrant County Jail at
the time of the investigation.[17]  The record does not reveal, however, the
reason or reasons for trial counsel=s belief; thus, it is unclear whether this mistake (if it was, in
fact, a mistake) resulted from incorrect information after an investigation, a
miscommunication, an inadequate investigation, or some other cause.  From this record, we would have to speculate
to conclude that there were no legitimate and professionally sound reasons for
counsel=s conduct.[18]  

Trial
counsel should ordinarily be afforded an opportunity to explain his actions
before being denounced as ineffective even where the incident reasonably raises
questions as to certain trial preparation and strategy decisions.[19]  In the absence of evidence of counsel=s reasoning, the record is insufficient to overcome the presumption
that trial counsel=s conduct
falls within the wide range of professional, competent assistance.[20]  We overrule appellant=s second point.

In his third
and fourth points, appellant argues that the State improperly commented on
appellant=s failure to
testify and the trial court erroneously denied his motion for mistrial. 








When, as
here, the trial court sustains an objection and instructs the jury to disregard
but denies a defendant=s motion for
a mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.[21]  In determining whether the trial court abused
its discretion in denying the mistrial, we balance three factors:  (1) the severity of the misconduct
(prejudicial effect), (2) curative measures, and (3) the certainty of
conviction absent the misconduct.[22]  Only in extreme circumstances, when the
prejudice is incurable or the comment is Aso prejudicial
that expenditure of further time and expense would be wasteful and futile,@ will a mistrial
be required.[23]


During closing argument, the prosecutor
stated, AThere is no
evidence to controvert her statement.  
HerC[B.H.], what she told you is
uncontroverted.  Evelynn, confused.@[24]  The trial court sustained appellant=s objection that
the remark commented on appellant=s failure to
testify and instructed the jury to disregard it.  The prosecutor then attempted to explain his
comment.  He said,








What I mean is that in cross-examination .
. . there was nothing to controvert [B.H.]=s story.  WhatCwhat defense
counsel has you believe is Larry Valone . . . our investigator, I couldn=t bring you that
because it was hearsay.  It was not
admissible.  He had every chance to call
Larry himself and ask him those questions.[25]


When assessing the prejudicial effect of a
statement, it is important to view it in context.[26]  The argument at issue could have referred to
appellant=s failure to call the State=s investigator as
a witness, and the State may properly comment on an accused=s failure to
produce testimony from sources other than himself.[27]  Thus, the comment at issue was arguably
proper and constituted at worst an indirect comment on the defendant=s failure to
testify.[28]  Further, the allegedly improper argument only
occurred at one point, in rebuttal, and the objectionable line of reasoning was
not pursued or emphasized. 








Secondly, the trial court and the
prosecutor both attempted to cure any prejudice from the comment.  After sustaining the objection, the trial
court instructed the jury to Adisregard that
last statement by [the prosecutor].@  Generally, a prompt instruction to disregard
will cure any prejudice associated with an improper argument.[29]  Further, the prosecutor
explained his argument to the jury, indicating that he meant to say that
appellant could have brought the State=s investigator to testify.  A
prosecutor=s curative
comment is relevant in determining harm and can, in appropriate circumstances,
render an improper comment harmless.[30]  








Finally,
absent the prosecutor=s comment,
the State still had a solid case.  The
main issue at trial was whether B.H.=s claims, made five years after the sexual assaults occurred, were
credible, and appellant emphasized the delay in her outcry.  Although the State=s case rested mainly on B.H.=s testimony, there was some corroboration: one of B.H.=s friends noticed a dramatic change in her behavior and acts of
self-mutilation around the time of the alleged assaults.  The jury, who is the sole judge of the
credibility of the witnesses,[31] evidently
believed B.H.  

In summary, nothing in the record suggests
that this is an Aextreme circumstance@ where the
prejudice from the allegedly improper argument was incurable.[32]  Accordingly, we hold that the instruction to
disregard and prosecutor=s curative comment cured the prejudice, if
any, and the trial court did not abuse its discretion in denying appellant=s motion for
mistrial.  We overrule appellant=s fourth point.[33]

In his fifth
point, appellant argues that the trial court erred when it allowed the State to
introduce, during punishment, extraneous offenses without proper notice as
required by Texas Code of Criminal Procedure article 37.07, section 3(g). 








Under
article 37.07, sections 3(a) and (g), a trial court abuses its discretion in
admitting evidence of an extraneous offense during the punishment stage if the
State failed to provide notice of its intent to introduce the offense after a Atimely request@ by the
defendant.[34]  On July 18, 2006, appellant filed a motion
requesting notice of the State=s intent to introduce evidence of other crimes, wrongs, and acts.  On July 24, 2006, the State filed a response,
giving notice of its intent to offer thirty-seven extraneous offenses and bad
acts including the following:  

(26)  On or about April 30,
1989, in Taylor County, Texas, the Defendant kidnapped Aurora Annette Ballenger
[sic] at gun point.

 








During the
punishment phase, Annette Royal, an ex-girlfriend of appellant who was
previously known as Aurora Ballinger, took the stand.  Royal testified that, among other acts of
violence committed by appellant, in April 1989 appellant hit her in the face
with the butt of a shotgun, kidnapped her and her son, and drove her from
Taylor County to Tarrant County.  During
the course of this ordeal, Royal testified, appellant raped her twice, once in
view of her child.  Appellant objected to
this testimony, arguing it did not appear in the State=s notice of extraneous offenses. 
The trial court overruled the objection.        The State=s duty to provide notice under Article 37.07, section 3(g) is
triggered only if the defendant makes a timely request.[35]  When a document seeks trial court action (as
opposed to being a Aself-executing
request@), it cannot also serve as a request for notice triggering the State=s duty under section 3(g).[36]  If a document=s substantive form is like a motion and the movant does not obtain a
ruling by the trial court, the document will not constitute a timely request
sufficient to trigger the State=s duty to provide notice.[37]

Here,
appellant=s request
for notice was clearly a motion.  It was
titled ADefendant=s Motion
Requesting Notice of Prsecutions [sic] Intent to Introduce Evidence of Other
Crimes, Wrongs or Acts,@ and it was
filed with the trial court.  It was also
addressed to the trial court, and its certificate of service characterized it
as a Amotion.@  It included a fill-in-the-blank Aorder@ for the
trial court to grant or deny the request. 








        The
trial court apparently never ruled on the motion.  We have found no indication in the clerk=s record that the trial court granted or denied the motion, and the
court=s docket does not reflect a ruling. 
The reporter=s record
does not contain any hearing or oral ruling on the motion.[38]


Because
appellant=s request
was a motion filed with the court and he failed to obtain a ruling, the State
was not required to provide notice of its intent to introduce extraneous
offenses at punishment.[39]  The fact that the State provided notice of
some extraneous offenses or bad acts does not relieve the defendant from having
to make a timely request for notice of other extraneous offenses.[40]  Accordingly, we hold that the trial court did
not abuse its discretion in overruling appellant=s objections to the testimony at issue, and we overrule his fifth
point.








Having overruled appellant=s first, second, fourth, and fifth points, which are dispositive of
the appeal, we affirm the trial court=s judgment.[41]

 

PER CURIAM

PANEL F:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

 

DO NOT PUBLISH        

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  March 13, 2008                                       











[1]See Tex. R. App. P. 47.4.





[2]The
trial court ordered the sentences to run concurrently. 





[3]In
the trial court, appellant objected to this testimony based on rules of
evidence 403 and 803(4) and, to some of the testimony, as bolstering.  On appeal, however, appellant=s
point of error is limited to rule 803(4). 
Appellant argues in passing that A[t]he only
purpose . . . was to bolster the testimony of the
complainant,@ but
he does not cite relevant case law to support a bolstering argument.  Thus, we do not address this ground.  See Tex.
R. App. P. 38.1(h). 





[4]Tex. R. Evid. 803(4).





[5]Beheler
v. State, 3 S.W.3d 182, 187 (Tex. App.CFort
Worth 1999, pet. ref=d)
(holding that appellant failed to preserve error regarding complainant=s
statements to sexual assault nurse where complainant testified, without
objection, to substantially same facts as nurse related); see also Reyes v.
State, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (holding that a defendant
who allows evidence to be introduced from one source without objection forfeits
any subsequent complaints about the introduction of the same evidence from
another source); Massey v. State, 933 S.W.2d 141, 149 (Tex. Crim. App.
1996) (same); Mayes v. State, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991)
(holding that the admission of one witness=s testimony without objection
rendered the improper admission of another witness=s
testimony harmless because the witnesses= testimony established
substantially the same evidence).





[6]At
some point before telling the police, however, B.H. testified that she had told
her mother, her biological father, and three friends. 





[7]See Tex. R. App. P. 33.1(a)(1); Lagrone
v. State, 942 S.W.2d 602, 617B18 (Tex. Crim. App.), cert.
denied, 522 U.S. 917 (1997).





[8]There
is an inconsistency as to the date of the first assault; Duclow said B.H. told
her that it occurred October 22, whereas B.H. testified that it occurred
October 2.  However, Duclow also stated
that she believed the incident B.H. described first was the first assault, and
then went on to describe a second event on October 12 and a third event at the
end of October before Halloween. 
Further, the details of the two descriptions of the Afirst
event@
match very closely.  We conclude that,
despite the difference in dates, Duclow=s testimony regarding the
first event was substantially the same as B.H.=s. 





[9]See
Beheler, 3 S.W.3d at 187B88; see also Reyes,
84 S.W.3d at 638; Massey, 933 S.W.2d at 149; Mayes, 816 S.W.2d at
88.





[10]Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064
(1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett
v. State, 65 S.W.3d 59, 62B63 (Tex. Crim. App. 2001); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). 





[11]Strickland, 466
U.S. at 687, 104 S. Ct. at 2064; Hernandez v. State, 726 S.W.2d 53, 56B57
(Tex. Crim. App. 1986).





[12]Thompson, 9
S.W.3d at 813B14.





[13]Salinas, 163
S.W.3d at 740 (quoting Mallett, 65 S.W.3d at 63).





[14]Id.
(quoting Thompson, 9 S.W.3d at 813).





[15]Mata
v. State, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).





[16]See
Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).





[17]Trial
counsel inquired of Detective Pitt, for example, AWhen
you located [appellant] and you knew . . . [appellant] was here in Tarrant
County, Texas, obviously the next thing you did was go speak to him, correct?@  He also later stated to the trial court, AHe
was in Tarrant County jail.  The officer
could have interviewed him if he wanted to.@ 





[18]See
Bone, 77 S.W.3d at 836.





[19]See
Rylander v. State, 101 S.W.3d 107, 110B11
(Tex. Crim. App. 2003); Bone, 77 S.W.3d at 836.





[20]See
Freeman v. State, 125 S.W.3d 505, 506B07
(Tex. Crim. App. 2003); Rylander, 101 S.W.3d at 110B11; Bone,
77 S.W.3d at 836B37; Thompson,
9 S.W.3d at 814.





[21]Hawkins
v. State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).





[22]Id.; Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).





[23]Hawkins, 135
S.W.3d at 77; see also Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim.
App. 2003), cert. denied, 542 U.S. 905 (2004).





[24]Evelynn,
appellant=s
biological daughter, testified that she lived with appellant and slept in the
same room as B.H. during October 1999, before moving away in December
1999.  Evelynn=s
aunt also testified that Evelynn lived in appellant=s
house in October 1999.  A Fort Worth ISD
records custodian, however, had records for Evelynn for the 1998B99
school year, but not for the 1999B2000 school year.  





[25]Evelynn
testified that Valone, the State=s investigator, telephoned
her, but the trial court sustained the State=s hearsay objections as to
details of the conversation. 





[26]See
Hawkins, 135 S.W.3d at 78B80; Kosick v. State,
No. 02-06-00056-CR, 2007 WL 2460351, at *13 (Tex. App.CFort
Worth Aug. 31, 2007, no pet.) (mem. op. on reh=g,
not designated for publication).





[27]Wolfe
v. State, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996) (AA
prosecutor cannot comment on the lack of evidence presented where that comment
necessarily refers to the defendant=s failure to testify, but
language that can reasonably be construed as a failure to present evidence other
than the defendant=s
testimony is not a comment on the failure to testify.@); Harris
v. State, 122 S.W.3d 871, 884 (Tex. App.CFort Worth 2003, pet. ref=d).





[28]See
Wolfe, 917 S.W.2d at 279.





[29]Hawkins, 135
S.W.3d at 84; Longoria v. State, 154 S.W.3d 747, 763B64
(Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).





[30]Hawkins, 135
S.W.3d at 84 (characterizing a prosecutor=s apology and retraction
after improper argument as curative measures); Canales v. State, 98
S.W.3d 690, 696B97
(Tex. Crim. App.) (holding that any error was harmless where prosecutor
corrected any misstatements of the law immediately following objectionable
comments), cert. denied, 540 U.S. 1051 (2003).





[31]E.g., Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).





[32]See
Hawkins, 135 S.W.3d at 77.





[33]We,
therefore, need not address appellant=s third point in which he
contends that the State=s
argument was improper.  See Tex. R. App. P. 47.1; Harris,
122 S.W.3d at 887.





[34]Tex. Code Crim. Proc. Ann. art.
37.07, '
3(a), (g) (Vernon 2006 & Supp. 2007); Mitchell v. State, 982 S.W.2d
425, 426 n.1 (Tex. Crim. App. 1998); Scott v. State, 57 S.W.3d 476, 481
(Tex. App.CWaco
2001, pet. ref=d).





[35]Tex. Code Crim. Proc. Ann. art.
37.07, '
3(g); Mitchell, 982 S.W.2d at 427.





[36]See
Mitchell, 982 S.W.2d at 427; Woodward v. State,
170 S.W.3d 726, 728B29
(Tex. App.CWaco
2005, pet. ref=d).





[37]Mitchell, 982
S.W.2d at 427; Woodward, 170 S.W.3d at 728B29.





[38]It is
usually the appealing party=s burden to present a record
showing properly preserved, reversible error.  Word v. State, 206 S.W.3d 646, 651B52
(Tex. Crim. App. 2006).





[39]See
Mitchell, 982 S.W.2d at 427; Woodward, 170 S.W.3d
at 728B29.





[40]See
Woodward, 170 S.W.3d at 729 (rejecting appellant=s
argument that because the State provided notice of some extraneous offenses or
bad acts without a proper request, it was obligated to provide reasonable
notice as to all bad acts it would use).





[41]See Tex. R. App. P. 47.1.