

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-06-271-CR**

ARTHUR LEE PIERSON, JR.                                                      APPELLANT

V.

THE STATE OF TEXAS                                                               STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Arthur Lee Pierson, Jr. appeals his convictions and sentences for four counts of aggravated sexual assault of a child under fourteen years of age. We affirm.

In 2004, appellant's former step-daughter B.H. alleged that appellant sexually assaulted her on three different occasions in October 1999, when she

---

[1]*See* TEX. R. APP. P. 47.4.

was thirteen years old. Each of the three incidents followed a similar pattern: appellant woke B.H. from her sleep; had sexual intercourse with her and, on one occasion, oral sex; and then made B.H. go to the bathroom and give him her underwear. Appellant threatened B.H. that he would kill her and other family members if she told anyone. Following a five-day trial, a jury convicted appellant of four counts of aggravated sexual assault of a child under fourteen years of age and sentenced him to four ninety-nine year terms of incarceration.[2]

In his first point, appellant argues that the trial court improperly admitted B.H.'s 2004 statements to sexual assault nurse Donna Duclow over his rule 803(4) objection.[3]

Texas Rule of Evidence 803(4) contains a hearsay exception for statements made for medical diagnosis or treatment.[4] Appellant claims Duclow's testimony does not fit under this exception. Where substantially the same evidence complained of on appeal is received without objection from a

---

[2]The trial court ordered the sentences to run concurrently.

[3]In the trial court, appellant objected to this testimony based on rules of evidence 403 and 803(4) and, to some of the testimony, as bolstering. On appeal, however, appellant's point of error is limited to rule 803(4). Appellant argues in passing that "[t]he only purpose . . . was to bolster the testimony of the complainant," but he does not cite relevant case law to support a bolstering argument. Thus, we do not address this ground. *See* TEX. R. APP. P. 38.1(h).

[4]TEX. R. EVID. 803(4).

2

different source, however, an appellant forfeits his complaint regarding admission of the objectionable testimony.[5]

Duclow interviewed B.H. on September 3, 2004 at John Peter Smith Hospital ("JPS"). As was her practice, she wrote B.H.'s history "word for word." Over appellant's hearsay objection, Duclow testified that B.H. stated the following:

- The "first event" occurred on October 22, 1999 between 2 and 3 a.m. Appellant entered B.H.'s room, woke her, picked her up, placed her on the floor, and had sexual intercourse with her. He threatened to kill her, her sister, or grandmother if she told anyone. He said he would "pop [her] cherry." Afterwards, appellant told B.H. to get her underwear and go into the bathroom, and he asked whether she was bleeding.

- On October 12, 1999 appellant again woke B.H. from her sleep in the middle of the night, got her out of her bed, and laid her down on her floor. Appellant performed oral sex on her and then had sexual intercourse with her. He told her not to tell because her mom and

---

[5]*Beheler v. State*, 3 S.W.3d 182, 187 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that appellant failed to preserve error regarding complainant's statements to sexual assault nurse where complainant testified, without objection, to substantially same facts as nurse related); *see also Reyes v. State*, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002) (holding that a defendant who allows evidence to be introduced from one source without objection forfeits any subsequent complaints about the introduction of the same evidence from another source); *Massey v. State*, 933 S.W.2d 141, 149 (Tex. Crim. App. 1996) (same); *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (holding that the admission of one witness's testimony without objection rendered the improper admission of another witness's testimony harmless because the witnesses' testimony established substantially the same evidence).

3

sister would be mad because appellant paid the bills. He directed her to go to the bathroom and took her underwear.

- Just before Halloween 1999, appellant again came and got B.H. from her bed, pushed her toward the living room, and laid her down there. He had sexual intercourse with her, first with appellant on top and then with B.H. in that position. A woman called "Auntie" was sleeping on the couch in the living room. Afterwards, B.H. went to the bathroom, and appellant took her underwear.

Duclow did not perform a physical examination because "after a five-year period any trauma or injury directly related to the assault [would be] healed, gone, or not visible."

The following day, B.H. testified to the following:

- On October 2, 1999, appellant came into her room around 2 or 3 a.m., woke her up, took her off her bed, and put her on the floor. Appellant kissed her on her neck and breast, said he would "pop her cherry," and asked her if she wanted to be his girlfriend. He then had sexual intercourse with her, threatening that if she told anyone, there would be no one to take care of the family. After it ended, he pushed her towards the restroom, told her to give him her underwear, and asked if she was bleeding.

- On October 12, 1999, around 3 a.m., appellant woke B.H. up, picked her up off her bed, and put her on the floor. He performed oral sex on her and then had sexual intercourse with her. He threatened to kill her, her sister, and her grandmother if she told anyone. He then told her to go to the bathroom and took her underwear.

- At the end of October 1999, before Halloween, around 1 or 2 a.m., appellant woke her up and pushed her into the living room where a woman she called "Auntie" was asleep on the couch. There appellant had sexual intercourse with B.H.; at first appellant was on top and then he moved B.H. to that position. Afterwards, appellant had her go to the bathroom and give him her underwear.

4

Appellant did not object to any of this testimony.

After B.H. described the three occurrences, she explained that she did not immediately contact the police because of appellant's threats.[6]  In 2004, after graduating from high school, she approached a probation officer who directed her to CPS and the police, and she eventually spoke to sexual assault nurse Duclow.  After the prosecutor asked, "And obviously you told [Duclow at JPS] what happened, right?" appellant attempted to "renew" the hearsay objection he made the day before to Duclow's testimony.

The record indicates that appellant's objection referred to the State's last question, "And obviously you told [Duclow at JPS] what happened, right?," and if the objection was intended to relate back to B.H.'s descriptions of the sexual assaults, it was untimely for that purpose and did not preserve error as to that testimony.[7]  Thus, appellant did not make a proper objection to B.H.'s testimony describing the sexual assaults.

---

[6]At some point before telling the police, however, B.H. testified that she had told her mother, her biological father, and three friends.

[7]See TEX. R. APP. P. 33.1(a)(1); *Lagrone v. State*, 942 S.W.2d 602, 617–18 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997).

5

Duclow and B.H.'s testimony was very similar. Both described sexual assaults appellant perpetrated on B.H. on three nights in October 1999.[8] Details such as appellant's words, the specific sexual actions he performed (and the order thereof), the locations of the assaults, the presence of Auntie, and appellant's conduct and demands following each assault were practically identical.

Because appellant did not object to the relevant portions of B.H.'s testimony, and it is substantially the same as what he now complains about on appeal (Duclow's testimony), he forfeited the error, if any, regarding Duclow's testimony.[9] We overrule appellant's first point.

In his second point, appellant contends that he was denied effective assistance of counsel under the United States and Texas Constitutions because his trial counsel opened the door on cross-examination of Detective Mark Pitt

---

[8]There is an inconsistency as to the date of the first assault; Duclow said B.H. told her that it occurred October 22, whereas B.H. testified that it occurred October 2. However, Duclow also stated that she believed the incident B.H. described first was the first assault, and then went on to describe a second event on October 12 and a third event at the end of October before Halloween. Further, the details of the two descriptions of the "first event" match very closely. We conclude that, despite the difference in dates, Duclow's testimony regarding the first event was substantially the same as B.H.'s.

[9]*See Beheler*, 3 S.W.3d at 187–88; *see also Reyes*, 84 S.W.3d at 638; *Massey*, 933 S.W.2d at 149; *Mayes*, 816 S.W.2d at 88.

6

to allow the State to show the jury that appellant was in custody in another county.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.[10] The test for ineffective assistance of trial counsel is the same under the federal and state constitutions.[11]

A reviewing court, however, will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.[12] In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions.[13] To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must

---

[10]*Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[11]*Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

[12]*Thompson*, 9 S.W.3d at 813–14.

[13]*Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63).

7

affirmatively demonstrate the alleged ineffectiveness.[14] It is not appropriate for an appellate court simply to infer ineffective assistance based upon unclear portions of the record.[15]

During cross-examination of Detective Pitt, appellant's attorney suggested that the detective did not conduct an impartial, "full and complete" investigation of B.H.'s allegations before writing an arrest warrant for appellant. To that end, appellant's attorney elicited the fact that Detective Pitt did not speak with the responding officers but only read their report, suggested that the detective's training was not as extensive as it could have been, insinuated that child advocates are predisposed to believe a child is telling the truth, and questioned the detective's failure to speak to appellant to get his side of the story. To the last allegation, Detective Pitt responded, "There were reasons."

Outside the presence of the jury, the State argued that defense counsel opened the door as to why the detective did not interview appellant. The trial court agreed. With the trial court's permission, therefore, Detective Pitt testified on redirect that he did not interview appellant because he learned that

---

[14]*Id.* (quoting *Thompson*, 9 S.W.3d at 813).

[15]*Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

8

appellant was "in custody in another county," and it was not unusual not to travel outside the county to attempt to speak with a suspect.

Appellant acknowledges that the record on direct appeal is usually silent on the question of trial strategy. He argues, however, that the record in this case reflects trial counsel's mistaken belief that appellant was in the Tarrant County Jail at the time of the investigation and that this is an error for which no explanation of trial strategy is needed because appellant's trial counsel had clearly not conducted a thorough investigation.

To prevail on his ineffective assistance point, appellant must prove by a preponderance of the evidence that there is "no plausible professional reason for a specific act or omission."[16] Indeed, the record shows that trial counsel appeared to believe appellant was in the Tarrant County Jail at the time of the investigation.[17] The record does not reveal, however, the reason or reasons for trial counsel's belief; thus, it is unclear whether this mistake (if it was, in fact, a mistake) resulted from incorrect information after an investigation, a

---

[16]*See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

[17]Trial counsel inquired of Detective Pitt, for example, "When you located [appellant] and you knew . . . [appellant] was here in Tarrant County, Texas, obviously the next thing you did was go speak to him, correct?" He also later stated to the trial court, "He was in Tarrant County jail. The officer could have interviewed him if he wanted to."

miscommunication, an inadequate investigation, or some other cause. From this record, we would have to speculate to conclude that there were no legitimate and professionally sound reasons for counsel's conduct.[18]

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective even where the incident reasonably raises questions as to certain trial preparation and strategy decisions.[19] In the absence of evidence of counsel's reasoning, the record is insufficient to overcome the presumption that trial counsel's conduct falls within the wide range of professional, competent assistance.[20] We overrule appellant's second point.

In his third and fourth points, appellant argues that the State improperly commented on appellant's failure to testify and the trial court erroneously denied his motion for mistrial.

When, as here, the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether

---

[18]*See Bone*, 77 S.W.3d at 836.

[19]*See Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Bone*, 77 S.W.3d at 836.

[20]*See Freeman v. State*, 125 S.W.3d 505, 506–07 (Tex. Crim. App. 2003); *Rylander*, 101 S.W.3d at 110–11; *Bone*, 77 S.W.3d at 836–37; *Thompson*, 9 S.W.3d at 814.

10

the trial court abused its discretion in denying the mistrial.[21]  In determining

whether the trial court abused its discretion in denying the mistrial, we balance

three factors:  (1) the severity of the misconduct (prejudicial effect), (2) curative

measures, and (3) the certainty of conviction absent the misconduct.[22]  Only

in extreme circumstances, when the prejudice is incurable or the comment is

"so prejudicial that expenditure of further time and expense would be wasteful

and futile," will a mistrial be required.[23]

During closing argument, the prosecutor stated, "There is no evidence to

controvert her statement.   Her—[B.H.], what she told you is uncontroverted.

Evelynn, confused."[24]  The trial court sustained appellant's objection that the

remark commented on appellant's failure to testify and instructed the jury to

disregard it.  The prosecutor then attempted to explain his comment.  He said,

---

[21]*Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

[22]*Id.*; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[23]*Hawkins*, 135 S.W.3d at 77; *see also Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

[24]Evelynn, appellant's biological daughter, testified that she lived with appellant and slept in the same room as B.H. during October 1999, before moving away in December 1999.  Evelynn's aunt also testified that Evelynn lived in appellant's house in October 1999.  A Fort Worth ISD records custodian, however, had records for Evelynn for the 1998–99 school year, but not for the 1999–2000 school year.

11

What I mean is that in cross-examination . . . there was nothing to controvert [B.H.]'s story. What—what defense counsel has you believe is Larry Valone . . . our investigator, I couldn't bring you that because it was hearsay. It was not admissible. He had every chance to call Larry himself and ask him those questions.[25]

When assessing the prejudicial effect of a statement, it is important to view it in context.[26] The argument at issue could have referred to appellant's failure to call the State's investigator as a witness, and the State may properly comment on an accused's failure to produce testimony from sources other than himself.[27] Thus, the comment at issue was arguably proper and constituted at worst an indirect comment on the defendant's failure to testify.[28] Further, the allegedly improper argument only occurred at one point, in rebuttal, and the objectionable line of reasoning was not pursued or emphasized.

---

[25]Evelynn testified that Valone, the State's investigator, telephoned her, but the trial court sustained the State's hearsay objections as to details of the conversation.

[26]*See Hawkins*, 135 S.W.3d at 78–80; *Kosick v. State*, No. 02-06-00056-CR, 2007 WL 2460351, at *13 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op. on reh'g, not designated for publication).

[27]*Wolfe v. State*, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996) ("A prosecutor cannot comment on the lack of evidence presented where that comment necessarily refers to the defendant's failure to testify, but language that can reasonably be construed as a failure to present evidence other than the defendant's testimony is not a comment on the failure to testify."); *Harris v. State*, 122 S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pet. ref'd).

[28]*See Wolfe*, 917 S.W.2d at 279.

Secondly, the trial court and the prosecutor both attempted to cure any prejudice from the comment. After sustaining the objection, the trial court instructed the jury to "disregard that last statement by [the prosecutor]." Generally, a prompt instruction to disregard will cure any prejudice associated with an improper argument.[29] Further, the prosecutor explained his argument to the jury, indicating that he meant to say that appellant could have brought the State's investigator to testify. A prosecutor's curative comment is relevant in determining harm and can, in appropriate circumstances, render an improper comment harmless.[30]

Finally, absent the prosecutor's comment, the State still had a solid case. The main issue at trial was whether B.H.'s claims, made five years after the sexual assaults occurred, were credible, and appellant emphasized the delay in her outcry. Although the State's case rested mainly on B.H.'s testimony, there was some corroboration: one of B.H.'s friends noticed a dramatic change in her behavior and acts of self-mutilation around the time of the alleged assaults.

---

[29]*Hawkins*, 135 S.W.3d at 84; *Longoria v. State*, 154 S.W.3d 747, 763–64 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

[30]*Hawkins*, 135 S.W.3d at 84 (characterizing a prosecutor's apology and retraction after improper argument as curative measures); *Canales v. State*, 98 S.W.3d 690, 696–97 (Tex. Crim. App.) (holding that any error was harmless where prosecutor corrected any misstatements of the law immediately following objectionable comments), *cert. denied*, 540 U.S. 1051 (2003).

13

The jury, who is the sole judge of the credibility of the witnesses,[31] evidently believed B.H.

In summary, nothing in the record suggests that this is an "extreme circumstance" where the prejudice from the allegedly improper argument was incurable.[32]   Accordingly, we hold that the instruction to disregard and prosecutor's curative comment cured the prejudice, if any, and the trial court did not abuse its discretion in denying appellant's motion for mistrial.  We overrule appellant's fourth point.[33]

In his fifth point, appellant argues that the trial court erred when it allowed the State to introduce, during punishment, extraneous offenses without proper notice as required by Texas Code of Criminal Procedure article 37.07, section 3(g).

Under article 37.07, sections 3(a) and (g), a trial court abuses its discretion in admitting evidence of an extraneous offense during the punishment stage if the State failed to provide notice of its intent to introduce the offense

---

[31]*E.g.*, *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

[32]*See Hawkins*, 135 S.W.3d at 77.

[33]We, therefore, need not address appellant's third point in which he contends that the State's argument was improper.  *See* TEX. R. APP. P. 47.1; *Harris*, 122 S.W.3d at 887.

14

after a "timely request" by the defendant.[34]  On July 18, 2006, appellant filed

a motion requesting notice of the State's intent to introduce evidence of other

crimes, wrongs, and acts.  On July 24, 2006, the State filed a response, giving

notice of its intent to offer thirty-seven extraneous offenses and bad acts

including the following:

> (26)  On or about April 30, 1989, in Taylor County, Texas, the
> Defendant kidnapped Aurora Annette Ballenger [sic] at gun point.

During the punishment phase, Annette Royal, an ex-girlfriend of appellant

who was previously known as Aurora Ballinger, took the stand.  Royal testified

that, among other acts of violence committed by appellant, in April 1989

appellant hit her in the face with the butt of a shotgun, kidnapped her and her

son, and drove her from Taylor County to Tarrant County.  During the course

of this ordeal, Royal testified, appellant raped her twice, once in view of her

child.  Appellant objected to this testimony, arguing it did not appear in the

State's notice of extraneous offenses.  The trial court overruled the objection.

The State's duty to provide notice under Article 37.07, section 3(g) is

---

[34] TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a), (g) (Vernon 2006 & Supp. 2007); *Mitchell v. State*, 982 S.W.2d 425, 426 n.1 (Tex. Crim. App. 1998); *Scott v. State*, 57 S.W.3d 476, 481 (Tex. App.—Waco 2001, pet. ref'd).

15

triggered only if the defendant makes a timely request.[35]  When a document

seeks trial court action (as opposed to being a "self-executing request"), it

cannot also serve as a request for notice triggering the State's duty under

section 3(g).[36]  If a document's substantive form is like a motion and the

movant does not obtain a ruling by the trial court, the document will not

constitute a timely request sufficient to trigger the State's duty to provide

notice.[37]

Here, appellant's request for notice was clearly a motion.  It was titled

"Defendant's Motion Requesting Notice of Prsecutions [sic] Intent to Introduce

Evidence of Other Crimes, Wrongs or Acts," and it was filed with the trial

court.  It was also addressed to the trial court, and its certificate of service

characterized it as a "motion."  It included a fill-in-the-blank "order" for the trial

court to grant or deny the request.

The trial court apparently never ruled on the motion.  We have found no

indication in the clerk's record that the trial court granted or denied the motion,

---

[35]  T EX. CODE CRIM. PROC. ANN. art. 37.07, § 3(g); *Mitchell*, 982 S.W.2d at 427.

[36]*See Mitchell*, 982 S.W.2d at 427; *Woodward v. State*, 170 S.W.3d 726, 728–29 (Tex. App.—Waco 2005, pet. ref'd).

[37]*Mitchell*, 982 S.W.2d at 427; *Woodward*, 170 S.W.3d at 728–29.

16

and the court's docket does not reflect a ruling. The reporter's record does not contain any hearing or oral ruling on the motion.[38]

Because appellant's request was a motion filed with the court and he failed to obtain a ruling, the State was not required to provide notice of its intent to introduce extraneous offenses at punishment.[39] The fact that the State provided notice of some extraneous offenses or bad acts does not relieve the defendant from having to make a timely request for notice of other extraneous offenses.[40] Accordingly, we hold that the trial court did not abuse its discretion in overruling appellant's objections to the testimony at issue, and we overrule his fifth point.

---

[38]It is usually the appealing party's burden to present a record showing properly preserved, reversible error. *Word v. State*, 206 S.W.3d 646, 651–52 (Tex. Crim. App. 2006).

[39]*See Mitchell*, 982 S.W.2d at 427; *Woodward*, 170 S.W.3d at 728–29.

[40]*See Woodward*, 170 S.W.3d at 729 (rejecting appellant's argument that because the State provided notice of some extraneous offenses or bad acts without a proper request, it was obligated to provide reasonable notice as to all bad acts it would use).

Having overruled appellant's first, second, fourth, and fifth points, which are dispositive of the appeal, we affirm the trial court's judgment.[41]

PER CURIAM

PANEL F: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: March 13, 2008

---

[41]*See* TEX. R. APP. P. 47.1.

18