COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-287-CR

NO. 2-07-288-CR

NO. 2-07-289-CR

 

 

JAMES MICHAEL DEAN                                                        APPELLANT

 

                                                      V.

 

THE STATE OF TEXAS                                                                 STATE

 

                                                  ------------

 

             FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

Appellant James Michael Dean
appeals four forty-five-year sentences imposed by a jury following his guilty
pleas and convictions for four counts of aggravated robbery.  In his sole point, appellant contends that
the trial court  erred by admitting
unduly prejudicial punishment evidence against him.  See Tex. R. Evid. 403.  We affirm.








Background Facts

Near midnight on October 25,
2006, appellant and another individual went to Moe=s Short Stop, a Hurst convenience store.  When appellant arrived, store employee Rajesh
Bajracharya was outside loading a truck. 
Appellant charged at Rajesh with a knife, knocked him down, and held the
knife about four inches from Rajesh=s face as appellant=s partner entered the store and took some money.  After appellant=s partner left the store, he and appellant searched Rajesh=s pockets and appellant took Rajesh=s wrist watch.  Four days later,
appellant and his partner went to another convenience store in Bedford, Texas,
where they robbed Chhitis Bhattachani.[2]
 

On the evening of November 2,
2006, appellant returned to Moe=s Short Stop, wearing black clothing, gloves, and sunglasses.  He walked behind the counter and pointed a
knife at Nikesh Shrestha, who was helping a friend run the store.  While doing so, appellant commanded Nikesh to
Aget down, bitch, or else I am going to stab you.@  While appellant continued to
point the knife at Nikesh, his partner took money from the store=s register.  During the robbery,
appellant also stole Nikesh=s backpack, his cell phone, and some of his cash. 













Three days later, appellant
went to the Quick Track convenience store in Bedford, again wearing black
clothing, gloves, and sunglasses.  While
holding a knife, appellant quickly walked around the counter and ordered store
clerk Santosh Gyawali to kneel.  After Santosh
complied with appellant=s command,
appellant took Santosh=s money, his
wallet, and his cell phone, as well as some of the store=s cigarettes before leaving. 
The Hurst and Bedford police departments conducted a joint investigation
and determined that appellant participated in each of the incidents.  They charged appellant with four counts of
aggravated robbery.[3]  At trial, after the parties conducted voir
dire and the State read appellant=s indictments, appellant pled guilty to each of the four charges.  In exchange for appellant=s guilty pleas, the State waived the habitual offender enhancement
paragraphs contained in the indictments, rendering appellant=s range of punishment at five to 99 years or life.[4]  See Tex. Penal Code Ann. '' 12.32(a), 29.03(b) (Vernon 2003). 

Before testimony began on the
issue of punishment, appellant=s counsel  alerted the trial
court that the State planned to introduce photographs of appellant=s tattoos, which connected appellant to racist organizations and
beliefs.  Appellant=s counsel argued that the photographs were inadmissible because they
were Anot relevant to the proceeding@ and they were Aoverly
inflammatory and prejudicial and not necessary to the conduct of the case or to
anything the State [was] required to prove.@  The State responded by
contending that the photographs demonstrated appellant=s negative character traits and his affiliation with a prison
organization that was associated with criminal activities.  The trial court deferred its ruling on the
photographs until they were actually offered in evidence. 








During appellant=s trial on punishment, Hurst Police Detective Chad Woodside (who had
previously served on a gang task force) testified about white supremacist gang
activity.  Specifically, Detective
Woodside testified that he was familiar with the Ku Klux Klan (KKK), that the
KKK was Ausually involved in crime,@ including violent crime, and that the KKK=s typical targets were minorities or individuals from other
countries.  Detective Woodside also
testified about an organization called the White Knights, which he explained
was an offshoot of the KKK.  He testified
that the White Knights also engaged in violent criminal activity.[5]  

Detective Woodside then
stated that both of these groups associate themselves with particular symbols,
such as swastikas, and also associate themselves with specific historical
figures, such as Adolf Hitler.  He related
that members of these groups commit violent activities while incarcerated.    








During a voir dire
examination while the jury was excused, the State then questioned Detective
Woodside about photographs of appellant=s tattoos, which depicted, among other images, a swastika and the
faces of Adolf Hitler, George Rockwell (the founder of the American Nazi
Party), and Reinhard Heydrich (one of the architects of the Holocaust and the
man considered by Hitler to be his successor). 
Detective Woodside admitted that while the tattoos indicated that
appellant had negative character traits, they did not specifically identify
appellant as a member of a particular white supremacist group, and a person
could have such tattoos without belonging to any particular group.  Detective Woodside also conceded that he was
not an expert on the philosophical principles of white supremacist groups and
their connection with criminal activity.








After the conclusion of the
voir dire examination, appellant=s counsel argued that the photographs were an avenue of political
expression, that they were insufficient to establish appellant=s link to any particular criminal organization, and that there was no
evidence that appellant=s robberies
were racially motivated.  Appellant=s counsel therefore contended that admission of the photographs would
punish appellant for exercising his constitutional rights and would unduly
prejudice him.[6]  The State responded by asserting that the
photographs related to appellant=s general reputation and his character and were therefore admissible
in the punishment phase of a trial. 
After hearing these arguments, the trial court overruled appellant=s objection to the photographs and granted appellant a running
objection to all evidence relating to the tattoos.[7]            

In its closing argument, the
State contended that appellant should have received a life sentence because, in
part, his tattoos demonstrated that he had a hateful, malicious character.  In response, appellant=s counsel asserted that appellant had joined the White Knights in
prison as an avenue of survival, that there was no evidence that the crimes he
had pled guilty to were racially motivated, and that appellant had exercised
his constitutional rights in maintaining his white supremacist beliefs.  After deliberating, the jury convicted
appellant of each of the four robbery charges (as instructed by the trial court
pursuant to appellant=s guilty
pleas), and then sentenced him to forty-five years= confinement on each charge. 








Admission of Tattoo
Photographs

In his sole point, appellant
asserts that his sentences should be reversed because the trial court erred in
its decision to admit the photographs of his tattoos.      

We review a trial court=s decision to admit or exclude evidence under an abuse of discretion
standard.  Martin v. State, 173
S.W.3d 463, 467 (Tex. Crim. App. 2005); Stevens v. State, 234 S.W.3d
748, 786 (Tex. App.CFort Worth
2007, no pet.).  Under this standard, if Athe ruling was correct on any theory of law applicable to the case, in
light of what was before the trial court at the time the ruling was made,@ then we must uphold the trial court=s decision.  Martin, 173
S.W.3d at 467.  The trial court=s ruling must stand as long as it was Aat least within the zone of reasonable disagreement.@  Id.  








The trial court=s evidentiary decision must be reasonable in light of all relevant
facts.  Santellan v. State, 939
S.W.2d 155, 169 (Tex. Crim. App. 1997). 
However, the Amere fact
that a trial judge may decide a matter within his discretionary authority in a
different manner than an appellate judge in a similar circumstance does not
demonstrate that an abuse of discretion has occurred.@  Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003).           Further, even if erroneous, the
admission or exclusion of evidence is a non‑constitutional error governed
by rule 44.2(b) of the Texas Rules of Appellate Procedure if the trial court=s ruling merely offends the rules of evidence.  See Tex. R. App. P. 44.2(b); Solomon
v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); Matz v. State,
21 S.W.3d 911, 912 (Tex. App.CFort Worth 2000, pet. ref=d) (op. on remand).[8]  Therefore, the error must be ignored unless
it had Aa substantial, injurious effect or influence on the jury=s verdict.@  See King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997); Matz, 21 S.W.3d at 912.  In other words, we must uphold the trial
court=s judgment if we have a Afair assurance that the error did not influence the jury, or had but a
slight effect.@  Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998).  Also, improper
admission of evidence does not constitute reversible error if the same facts
are proved by other properly admitted evidence. 
Reyes v. State, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002); Matz,
21 S.W.3d at 912 (holding that the trial court=s admission of videotaped testimony was not a reversible error where
live testimony established the same facts). 
      








When a defendant pleads
guilty before a jury, the proceeding becomes a unitary trial where the state
may introduce evidence allowing the jury to intelligently exercise discretion
in the assessment of punishment. 
Carroll v. State, 975 S.W.2d 630, 631B32 (Tex. Crim. App. 1998). 
Evidence of the defendant=s criminal record, his character, and his reputation is admissible.  See Basaldua v. State, 481 S.W.2d 851, 854
(Tex. Crim. App. 1972); see also Fuller v. State, 253 S.W.3d 220, 227
(Tex. Crim. App. 2008), petition for cert. filed, ___ U.S.L.W. ___ (U.S.
July 24, 2008) (No. 08‑6624) 
(explaining that when a Adefendant pleads guilty to a jury, the jury need not return any
verdict of guilty,@ and that
the case Asimply
proceeds with a unitary punishment hearing@).

Evidence is relevant to
punishment where it is Ahelpful to
the jury in determining the appropriate sentence for a particular defendant in
a particular case.@  Rodriguez v. State, 203 S.W.3d 837,
842 (Tex. Crim. App. 2006).  The evidence
that may be admitted in punishment Ais a function of policy rather than a question of logical relevance,@ because A[d]eciding
what punishment to assess is a normative process, not intrinsically factbound.@  Sunbury v. State, 88
S.W.3d 229, 233B34 (Tex.
Crim. App. 2002) (adding that one of the policy goals is to provide Acomplete information for the jury to tailor an appropriate sentence@).








Appellant argues that the
admission of the photographs depicting his tattoos  improperly directed the jurors to consider
his ethnicity, wrongly focused on his membership in a gang as a sentencing
factor, punished him for exercising his First Amendment rights, and unduly
prejudiced him by inflaming the jury.  He
therefore contends that the photographs should have been excluded.  In support of his argument that the jury was
improperly directed to consider his ethnicity, appellant cites section 3(a)(2)
of article 37.07 of the Texas Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art. 37.07 ' 3(a)(2) (Vernon Supp. 2008). 
That provision states that Aevidence may not be offered by the state to establish that the race or
ethnicity of the defendant makes it likely that the defendant will engage in
future criminal conduct.@  Id. 









However, the record in this
case does not indicate that the photographs of appellant=s tattoos were offered to establish that appellant would engage in
future criminal conduct merely because he was white.  Instead, at the time the photographs were
offered and during closing argument, the State contended that the photographs
established that appellant was connected with criminally violent groups, that
because of this connection he could engage in future criminal activities, and
that the tattoos reflected negatively on appellant=s general reputation and character. 
Because the photographs did not focus on appellant=s race but on his negative character as demonstrated by his beliefs
and associations, no violation of section 3(a)(2) occurred.  Id.; see also Hicks v. State,
Nos. 05‑04‑01664‑CR, 05‑04‑01665‑CR, 05‑04‑01666‑CR,
05‑04‑01667‑CR, and 05‑04‑01668‑CR, 2005 WL
3540844, at *3 (Tex. App.CDallas Dec.
28, 2005, no pet.) (not designated for publication) (upholding the trial court=s admission of photographs depicting white supremacist tattoos because
they were offered Aas evidence
of appellant=s
selfishness, and his impact on the victims, not as evidence to establish that
his race would make him more likely to engage in future criminal conduct@).

Next, appellant asserts that
the admission of the photographs wrongfully focused on his membership in white
supremacist gangs as a sentencing factor, relying on Beasley v. State,
902 S.W.2d 452, 455B57 (Tex.
Crim. App. 1995).  In Beasley, the
Texas Court of Criminal Appeals held that where evidence indicates that a gang
engages in criminal activities and has a negative reputation in the community,
then evidence that a defendant is a member of the gang is admissible at
punishment because it relates to the defendant=s character.  Id. at
456.  Specifically, the court held that
such evidence is admissible as long as the jury is (1) provided with evidence
of the defendant=s gang
membership, (2) provided with evidence of the character and reputation of the
gang, (3) not required to determine if the defendant committed the bad acts or
misconduct,  and (4) only asked to
consider the reputation or character of the accused.  Id. at 457.








Here, the jury was provided
evidence of appellant=s membership
in the White Knights through one of his tattoos which said AWhite Knights,@ through
other tattoos commonly associated with the White Knights, and through a jail
classification form which indicated his membership.  Testimony (by two former gang task force
officers) established that the White Knights organization is a prison gang that
engages in violent criminal activity against racial minorities.  As we have noted, the State submitted the
photographs for the purpose of relating appellant=s affiliation with the White Knights to his alleged hateful character,
rather than demonstrating that appellant had participated in a particular act
attributed to the gang.  For these
reasons, the trial court properly admitted evidence of appellant=s membership in the White Knights. 
See id.; Jones v. State, 944 S.W.2d 642, 653 (Tex.
Crim  App. 1996), cert. denied,
522 U.S. 832 (1997) (noting that evidence of gang membership is Arelevant to show the character of the defendant@); Stevenson v. State, 963 S.W.2d 801, 803 (Tex. App.CFort Worth 1998, pet. ref=d) (per curiam).








Appellant further argues that
admission of the photographs violated his First Amendment right to not have his
associations and expressions admitted against him at sentencing.  For this contention, he cites Dawson v.
Delaware,  503 U.S. 159, 112 S. Ct.
1093 (1992).  In Dawson, a
defendant convicted of capital murder contended that he had a constitutional
right forbidding  consideration in his
sentencing of any evidence concerning beliefs or activities that were protected
by the First Amendment.  Id. at
164; 112 S. Ct. at 1097.  Specifically,
Dawson contended that evidence showing he was a member of the Aryan Brotherhood
was inadmissible.  Id. at 163, 112
S. Ct. at 1096.  The Supreme Court
concluded that Athe
Constitution does not erect a per se barrier to the admission of
evidence concerning one=s beliefs
and associations at sentencing simply because those beliefs and associations
are protected by the First Amendment.@  Id. at 165; 112 S. Ct.
at 1097.  However, because there was no
evidence submitted that the Aryan Brotherhood was a gang that was associated
with criminal activity, or that Dawson=s membership in the Aryan Brotherhood was related to the murder,
Dawson=s membership in the Aryan Brotherhood was Atotally without relevance@ to his sentencing proceeding, and the Supreme Court therefore ruled
that such evidence should have been excluded. 
Id. at 165; 112 S. Ct. at 1097. 
In contrast, the Supreme Court noted that in other cases where evidence
of such facts does exist,  

associational
evidence might serve a legitimate purpose in showing that a defendant
represents a future danger to society.  A
defendant=s
membership in an organization that endorses the killing of any identifiable
group, for example, might be relevant to a jury=s
inquiry into whether the defendant will be dangerous in the future.

 

Id. at
166; 112 S. Ct. at 1098. 

 








Unlike Dawson, in this
case evidence was presented that the White Knights (as well as the KKK, as also
portrayed by appellant=s tattoos)
are associated with violent criminal activity and other acts of misconduct in
the prison setting.  For example, Hurst
Police Detective Chad Woodside testified that members of the White Knights or
KKK Amay do a crime just to get in the group, or to prove their status in
the group@ and that
such members are Aprone to be
involved in violence and criminal activity.@  With this type of testimony as
a background to apply to appellant=s connection with these groups, we conclude that appellant=s First Amendment rights were not violated.  See also Anderson v. State, 901 S.W.2d
946, 954 (Tex. Crim. App. 1995) (concluding that A[a]dmission of evidence of membership in a gang whose primary purpose
is illegal activity is not barred by the First Amendment as interpreted by the
Supreme Court in Dawson@); Garcia v. State, 239 S.W.3d 862, 867 (Tex. App.CHouston [1st Dist.] 2007, pet. ref=d), cert. denied, No. 08‑6150, 2008 WL 4107187 (2008)
(citing Dawson and upholding the trial court=s admission of evidence related to the defendant=s gang membership).

Finally, appellant contends
that the admission of the photographs violated Rule 403 of the Texas Rules of
Evidence because they were unfairly prejudicial. See Tex. R. Evid.
403.  Specifically, appellant argues that
the photographs created an undue tendency to suggest a decision on an improper
basis and that they compromised the fairness of the trial.[9]









 Under Rule 403, otherwise relevant evidence
may be excluded if its probative value is substantially outweighed by the
danger of unfair prejudice.  Tex. R.
Evid. 403; see Sanders v. State, 255 S.W.3d 754, 760 (Tex. App.CFort Worth 2008, pet. ref=d) (explaining that unfair prejudice Aarises from evidence that has an undue tendency to suggest that a
decision be made on an improper basis, commonly an emotional one@); Woodward v. State, 170 S.W.3d 726, 729 (Tex. App.C Waco 2005, pet. ref=d) (noting that Aunfair
prejudice@ does not
exist where the evidence merely Ainjures the opponent=s case@).  In applying Rule 403, the admission of
photographs is Awithin the
sound discretion of the trial court.@  Hayes v. State, 85
S.W.3d 809, 815 (Tex. Crim. App. 2002) (adding that Rule 403 Afavors the admission of relevant evidence and carries a presumption
that relevant evidence will be more probative than prejudicial@).  








Therefore, under Rule 403, we
reverse a trial court=s decision
to admit evidence rarely and only after a clear abuse of discretion.  Mozon v. State, 991 S.W.2d 841, 847
(Tex. Crim. App. 1999).  Factors
considered in our analysis of a issue regarding Rule 403 are (1) the probative
value of the evidence; (2) the potential to impress the jury in some irrational,
yet indelible, way; (3) the time needed to develop the evidence; and (4) the
proponent=s need for
the evidence.  See Erazo v. State,
144 S.W.3d 487, 489 (Tex. Crim. App. 2004).

The choice of tattoos may
reflect a defendant=s beliefs
that make him prone to future dangerousness. 
See Conner v. State, 67 S.W.3d 192, 201 (Tex. Crim. App. 2001); Woodward,
170 S.W.3d at 729 (explaining that A[a]t the punishment phase of a criminal trial, evidence may be
presented as to any matter that the court deems relevant to sentencing,
including evidence of the defendant=s background or character,@ and a Adefendant=s choice of tattoos, like his personal drawings, can reflect his
character@); Hicks,
2005 WL 3540844 at *3.  








As we have described,
appellant=s tattoos in
this case linked him to groups which (as established by testimony) have
criminal connections.  For this reason,
we conclude that the photographs depicting the tattoos were probative of
defendant=s character
for continuing to engage in criminal activities.[10]  When considered against testimony later
offered by appellant=s relatives
regarding appellant=s capability
for rehabilitation, the State=s need for this type of evidence becomes clear.  For instance, appellant=s cousin, Rick Sanders, testified that he believed appellant should be
minimally punished because he felt that appellant did not Awant to live this lifestyle,@ that appellant had a Apassion for . . . being a responsible citizen,@ and that appellant would not Abe a threat to society@ if he had an adequate support group. 
Rita Crouch, appellant=s aunt, added that appellant is a Avery, very loving person, very sweet-hearted,@ and that he Awants deep
down to try to do the right thing.@  These concepts differ
significantly with the ideas portrayed by tattoos of Adolf Hitler and Klansmen
with shotguns and nooses, among other images. 








Further, there is nothing in
the record suggesting that the photographs caused the jury to behave
irrationally in sentencing appellant. 
Instead, beyond the evidence regarding appellant=s tattoos and affiliations, the jury was also provided with evidence
substantiating appellant=s six
previous felony convictions and relating the fear of appellant=s victims during his robberies.[11]  Also, by sentencing appellant to forty-five
years= confinement, the jury decided to assess punishment at the middle of
the possible range of five to 99 years or life, which applied to the four
robberies.  See Tex. Penal Code
Ann. '' 12.32(a), 29.03(b).  Finally,
while a moderate amount of time was needed to develop testimony regarding
appellant=s tattoos
and what they portrayed, much of the testimony and the majority of the exhibits
submitted to the jury concerned other matters.  









For these reasons, we cannot
conclude that the trial court abused its discretion by applying the presumption
of admissibility under Rule 403 and admitting the photographs.  See Tex. R. Evid. 403 (stating that to
be excluded, the probative value of evidence must be substantially outweighed
by the danger of unfair prejudice); Hayes, 85 S.W.3d at 815; Mozon,
991 S.W.2d at 846B47.     Moreover, even if the trial court had erred
in its decision to admit the photographs of appellant=s tattoos, appellant stipulated to the admissibility of over a hundred
pages of documentary evidence indicating the same racial and religious
prejudices displayed by the tattoos.  The
documents included several copies of essays, articles, and jokes extolling the AWhite Race@ and
demeaning other people groups.  For
example, the literature contained an essay titled ADeath of the White Race@ which stated that AHitler was a kindly Uncle, provoked into action by Jewish wickedness.@  Also contained in the exhibit
was a series of jokes with a printout of a AFederal Nigger Hunting License.@  With these documents admitted
by stipulation, we cannot agree with appellant that the jury was improperly
induced Aby the highly prejudicial and inflammatory@ tattoo evidence as appellant argues in his brief.  See Reyes, 84 S.W.3d at 638  (explaining that a Adefendant who allows evidence to be introduced from one source without
objection forfeits any subsequent complaints about the introduction of the same
evidence from another source@).

For these reasons, we hold
that the trial court did not abuse its discretion in admitting evidence of
appellant=s
tattoos.  Therefore, we overrule
appellant=s sole
issue.

Conclusion 

Having overruled appellant=s only issue, we affirm the trial court's judgment.

 

PER CURIAM

 

PANEL: 
LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: November 6, 2008











[1]See Tex.
R. App. P. 47.4.





[2]Because
Chhitis did not testify, specific details regarding this incident are absent
from the record. 





[3]The
four robbery charges were indicted in three separate cases and each indictment
contained a habitual offender enhancement paragraph.  However, the cases were tried
concurrently.  





[4]Because
the waiver of the enhancement paragraphs affected only the minimum amount of
punishment appellant could have received, rather than capping the maximum
amount, no Aplea
bargain@
occurred for the purposes of Rule 25.2(a)(2) of the rules of appellate
procedure.  Tex. R. App. P. 25.2(a)(2); see
Taplin v. State, 78 S.W.3d 459, 461 (Tex. App.CAustin
2001, no pet.); 

Perez
v. State, 129 S.W.3d 282, 286 (Tex. App.CCorpus
Christi 2004, no pet.) (noting that A[o]nly a plea bargain that
incorporates an agreed recommendation as to punishment and is accepted by the
court@
triggers jurisdictional restrictions under Rule 25.2(a)(2)).





[5]Over
an objection by appellant=s
counsel, the trial court admitted a completed Tarrant County jail
classification form (based on answers given by appellant during the book-in
process) which indicated that appellant was a member of the White Knights and
that appellant had problems with Ablacks and Mexicans.@  Testimony indicated that the White Knights
are a gang that was formed in the Texas prison system.  The classification form also indicated that
appellant was a daily user of methamphetamine and that he had previously served
time in prison. 





[6]Despite
arguing that the photographs should be excluded, Appellant=s
counsel stipulated to the admissibility of some white supremacist literature appellant
had possessed.  Appellant=s
counsel also stipulated to the admissibility of Apen
packs@
which established that appellant had previously been convicted of six various
felony offenses. 





[7]Several
other photographs were later admitted in evidence which further depicted
appellant=s
tattoos.  For instance, one of these
photographs demonstrated that AWhite Knights@ was
tattooed on appellant's left forearm, and another exhibited a burning cross and
three hooded KKK Klansmen, with one of the Klansmen holding a noose and another
holding a shotgun.   





[8]Rule
44.2(b) states that any error in a criminal case other than constitutional
error that Adoes
not affect substantial rights must be disregarded.@  Tex. R. App. P. 44.2(b). 





[9]The
title of appellant=s
point on appeal also alleges a violation of Rule 401.  Tex. R. Evid. 401.  However, appellant admits in the body of his
argument that the photographs were relevant to appellant=s
punishment.  For these reasons, we will
limit our analysis as to whether the photographs were unfairly prejudicial
under Rule 403.  Tex. R. Evid. 403.





[10]The
State also contends that appellant=s prejudices, as indicated by
his tattoos, contributed to his commission of the burglaries.  However, there is no evidence in the record
which signals that the robberies were racially motivated.





[11] A
jury note submitted to the court during deliberations indicates that the jury
reviewed appellant=s
prior convictions before making its sentencing decision.