

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00082-CR

BRADFORD ALLEN THOMPSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 46th District Court
Wilbarger County, Texas
Trial Court No. 12,896, Honorable Cornell Curtis, Presiding

March 14, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Bradford Allen Thompson, appeals from his conviction of murder and resulting life sentence.[1] He raises six issues regarding evidentiary rulings, jury selection, and jury instructions. After careful consideration of the record and applicable law, we affirm the trial court's judgment.

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (c) (felony of the first degree).

## Background

In November 2022, Appellant was indicted for intentionally and knowingly causing the death of Andre Sandoval by shooting him with a firearm. Prior to trial, Appellant filed a motion to suppress evidence obtained during a warrantless search of his front yard, which the trial court denied after a hearing. In December 2023, a three-day jury trial was held.

The State's witnesses provided a detailed account of the shooting. On the evening of October 11, 2022, multiple witnesses observed Sandoval[2] sitting on a curb on Deaf Smith Street in Vernon, Texas. Witnesses heard a single "heavy" gunshot followed by rapid gunfire. The "heavy" gunshot was believed to be from a shotgun or rifle. One witness observed Appellant place a shotgun on the ground, pull out a pistol, and shoot rounds into Sandoval while standing over him. When the first pistol was empty, Appellant drew a second pistol and continued firing while Sandoval attempted to crawl away. Despite neighbors calling for him to stop, Appellant continued shooting until he had emptied the second pistol, with Sandoval attempting to curl into a protective ball. In all, testimony showed that Sandoval died from 31 gunshot entrance wounds. Appellant told a neighbor he shot Sandoval because "I was tired of him being there."

After the shooting, Appellant walked to his residence, placed the shotgun on a bench in his front yard, and put the two pistols in the bed of his pickup truck. He then

---

[2] Sandoval was about five-and-a-half feet tall and 112 pounds. Often, he was seen walking around town.

removed his shirt, lit a cigarette, and walked to the sidewalk with his hands raised above his head.  Police arrived shortly thereafter and placed him under arrest.

Appellant's wife, Sarahrae Thompson, testified during the punishment phase of trial.  She testified that for approximately four months before, Sandoval had been "lurking," and sitting on curbs throughout their neighborhood near her home.[3]  He would sometimes pace, mumble, and lie on the grass.  Mrs. Thompson was particularly uncomfortable when Sandoval would sit across the street watching her grandchildren play; a medical condition prevented her from defending herself and the children.  She testified that Appellant was aware of her concerns and that they had called the police multiple times regarding Sandoval.  According to her testimony, officers advised them that Sandoval was not breaking any law and there was nothing they could do to remove him.  Following Appellant's arrest, he said during a jailhouse telephone call with his wife, "I took care of the problem."

**Analysis**

Issue One:  Exclusion of Justification Evidence During Guilt Phase

In his first issue, Appellant argues the trial court erred by excluding testimony that Sandoval had a criminal history and may have uttered the word "gun" while near Appellant's residence three days before the shooting.[4]  Appellant contended this evidence

---

[3] According to Mrs. Thompson, Sandoval was never observed entering onto their property.

[4] Mrs. Thompson's testimony outside the jury's presence indicated that while she and Appellant were unloading groceries from their vehicle, Sandoval approached the corner nearby.  She heard him say the word "gun."  She turned to her husband and asked, "Did he say gun?"  Her husband responded by asking, "Does he have a gun?"  She replied that she did not know and suggested they quickly take their groceries inside the house.

was relevant to establishing that he had a reasonable belief that he needed to use deadly force to defend himself, his wife, or his grandchildren. The trial court ruled that in the absence of some evidence that Sandoval used or attempted to use unlawful force at or near the time of the shooting, the testimony was irrelevant, as well as more prejudicial than probative.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will not reverse the trial court's ruling unless it is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

Our analysis begins with determining whether the excluded evidence was relevant to the issues at trial. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. TEX. R. EVID. 401. For evidence to be relevant, it must be both material and probative. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). The Court of Criminal Appeals has explained that if no "issue" in the case could be influenced by the proffered evidence, then it is irrelevant and thus inadmissible. *Henley v. State*, 493 S.W.3d 77, 82 (Tex. Crim. App. 2016).

Appellant asserts the excluded evidence was relevant to justification defenses such as self-defense and defense of a third party. This requires evidence that a person reasonably believes the conduct "is immediately necessary" to avoid imminent harm. *See*

4

TEX. PENAL CODE ANN. § 9.31(a) (self-defense); § 9.32(a) (defense of person).  The critical element in each of these defenses is the showing of an *immediate* threat or danger.[5]

In this case, the record contains no evidence that at the time of the shooting, Sandoval engaged in any aggressive conduct or presented any immediate threat to Appellant or his family.  The proposed testimony—that Sandoval uttered the word "gun" three days before the shooting—does not establish any immediate threat or danger at the time Appellant shot Sandoval.  Given these circumstances, we conclude the trial court did not abuse its discretion by excluding the evidence of Sandoval's alleged utterance. The first issue is overruled.

## Issues Two and Three: Exclusion of Evidence and Denial of Instruction During Punishment Phase

In his second and third issues, Appellant contends the trial court erred during the punishment phase by excluding evidence and denying a jury instruction regarding: (1) Sandoval's alleged "gun" statement, and (2) Appellant's purported awareness of Sandoval's criminal history.  Appellant argues this evidence was relevant to whether he acted under the immediate influence of sudden passion arising from adequate cause when he shot Sandoval.

At the punishment stage of a trial for murder, a defendant "may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d).  If the defendant proves this

---

[5] The term "immediate" has been defined by the Court of Criminal Appeals as "[o]ccurring without delay; instant, [n]ot separated by other persons or things, or [h]aving a direct impact; without an intervening agency." *Sweed v. State*, 351 S.W.3d 63, 69 n.5 (Tex. Crim. App. 2011) (quoting BLACK'S LAW DICTIONARY 751 (7th ed.1999) (cleaned up).

issue by a preponderance of evidence, the offense is reduced from a first-degree felony to a second-degree felony. *Id.*

The Texas Penal Code defines sudden passion as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1).

To justify a jury instruction[6] on the issue of sudden passion at the punishment phase, the record must indicate the defendant requested such an instruction, and that the evidence supports an inference that:

1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment;

2) that the defendant's sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper;

3) that the defendant committed the murder before regaining his capacity for cool reflection; and

4) that a causal connection existed "between the provocation, passion, and homicide."

---

[6] Appellate review of an alleged charge error in the jury instructions is a two-step process. *Kirsch v. State,* 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we must determine whether a charge error exists. *Cortez v. State,* 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). Second, if error exists, we must conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.*; *Phillips v. State,* 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015).

*Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

Evidence suggesting Appellant was under stress with Sandoval's presence and may have "snapped" before pulling the trigger fails to satisfy the requirements for a sudden passion instruction. First, there was no evidence of any provocation by Sandoval at the time of the shooting that would commonly produce a violent response from a person of ordinary temper. No evidence indicated that Sandoval was armed or threatening when Appellant shot him.[7] The Penal Code explicitly requires that sudden passion be "directly caused by and arising out of provocation by the individual killed or another person acting with the person killed." TEX. PENAL CODE ANN. § 19.02(a)(2). Even if we consider Sandoval's "gun" utterance from three days earlier or criminal history, the code states that the passion must "arise[] *at the time of the offense* and is not solely the result of former provocation." *Id.* (emphasis supplied).

Second, the evidence does not show that Appellant was overcome by a high degree of passion or emotion at the time he shot Sandoval. Rather the evidence shows Appellant's conduct was methodical: he armed himself with multiple weapons, walked to Sandoval's location, shot him as many as 31 times (even continuing after Sandoval attempted to crawl away and neighbors called for him to stop), and then returned home, stored his weapons, lit a cigarette, put his hands above his head, and waited for police.

---

[7] Regarding Sandoval's alleged criminal history, the record fails to establish that Appellant was actually aware of this information at the time of the shooting. Although there was evidence that printouts of Sandoval's criminal record were shared in a family text messaging feed, the testimony merely established that Appellant "had access" to the information, not that he actually knew about it. Without evidence that Appellant knew of Sandoval's criminal history, this information could not have influenced his mental state at the time of the shooting.

These actions belie the claim that Appellant's mind was "incapable of cool reflection" at the time of the shooting. *See* TEX. PENAL CODE ANN. § 19.02(a)(1).

Finally, Appellant failed to establish a causal connection between any provocation, sudden passion, and the homicide. Although his counsel argued to the jury that Appellant "snapped," this assertion is insufficient to raise the issue of sudden passion. *See Geng v. State*, No. 11-22-00317-CR, 2024 Tex. App. LEXIS 5296, at *11–12 (Tex. App.—Eastland July 25, 2024, no pet.) (mem. op., not designated for publication) ("It could be argued that everyone that overreacts as a result of being angered 'snaps.' That Appellant said that he 'snapped' without more does not create an issue of sudden passion."). Having found that the issue of sudden passion was not raised by the evidence, we hold that the trial court did not abuse its discretion by denying Appellant's request for a sudden passion instruction. We overrule Appellant's second and third issues.

Issue Four: Warrantless Search of Front Yard

In his fourth issue, Appellant argues that the first responding police officer (Officer Antonio Sandoval) violated his constitutional rights by conducting a warrantless search of his front yard to verify the location of firearms involved in the shooting. Appellant argues that the officer exceeded his authority to perform a "protective sweep" because such sweeps are limited to "locating concealed accomplices who may launch a surprise attack against law enforcement," and because Appellant was already in custody when the sweep occurred.

We review a trial court's decision on a motion to suppress for abused discretion. *Jordan v. State,* 271 S.W.3d 850, 854 (Tex. App.—Amarillo 2008, pet. ref'd). "We give

8

almost total deference to the trial court's findings of fact and review de novo the application of the law to the facts." *State v. Ruiz,* 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). When a trial judge makes express findings of fact, as in this case, an appellate court must examine the record in the light most favorable to the ruling and uphold those findings if they are supported by the record. *State v. Rodriguez,* 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). We will uphold the trial court's ruling if it is correct under any applicable theory of law that is reasonably supported by the record. *State v. Ruiz,* 581 S.W.3d 782, 785 (Tex. Crim. App. 2019).

While both our federal and state constitutions protect one against unreasonable searches and seizures, that protection exists only if the individual has a reasonable expectation of privacy in the thing searched. *Oliver v. United States*, 466 U.S. 170, 177 (1984). If there is no such expectation, there is no constitutional protection. *See Buchanan v. State*, 129 S.W.3d 767, 771 (Tex. App.—Amarillo 2004, pet. ref'd). Furthermore, the burden lies with the accused to establish this expectation. *Id.* (citing *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996)).

A person generally has a reasonable expectation of privacy in his or her home, *Kentucky v. King,* 563 U.S. 452, 459 (2011); *Martin v. State,* 620 S.W.3d 749, 759 (Tex. Crim. App. 2021), and its curtilage. *Collins v. Virginia*, 584 U.S. 586, 593 (2018). However, this protection has important limitations. Police may lawfully enter sidewalks, pathways, and common entrances to approach a front door without a warrant. *See Bower v. State,* 769 S.W.2d 887, 897 (Tex. Crim. App. 1969)*, overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex. Crim. App. 1991).

The "plain view" doctrine establishes that observing what is in open view from a lawful vantage point is not a search, and permits warrantless seizure of evidence when: (1) the officer is legally present where evidence is visible; (2) discovery is inadvertent; and (3) it is immediately apparent to the officer that the item may be evidence of a crime, contraband, or otherwise subject to seizure. *Keehn v. State,* 279 S.W.3d 330, 334 (Tex. Crim. App. 2009). Thus, "[t]hough a home warrants a heightened measure of privacy, a driveway with an unrestricted view does not." *Romero v. State,* No. 13-14-00448-CR, 2015 Tex. App. LEXIS 11054, at *9 (Tex. App.—Corpus Christi Oct. 29, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that an officer did not violate constitutional rights when approaching a suspect on driveway and observing contraband in plain view inside a pickup truck). Similarly, courts have upheld both observations and seizures when officers simply walk along normal public pathways and spot items that anyone could see. *Vaughn v. State,* No. 05-93-00460-CR, 1994 Tex. App. LEXIS 3756, at *15–16 (Tex. App.—Dallas July 18, 1994, no writ) (not designated for publication) (holding that officers' entry onto curtilage was lawful when they followed the normal public pathway to home's porch and discovered contraband in plain view); *Smith v. State,* No. 14-90-00712-CR, 1991 Tex. App. LEXIS 1685, at *5 (Tex. App.—Houston [14th Dist.] July 3, 1991, no pet.) (not designated for publication) (upholding warrantless seizure of stolen items from an abandoned vehicle under the plain view doctrine, noting that "[t]he stereo cabinet and other stolen items were in plain view in the open bed of the pickup truck").

Applying these principles to the present case, we find the trial court properly denied Appellant's motion to suppress. When Officer Sandoval arrived at the scene, he observed

Appellant walking from his front yard into the street with his hands raised. After detaining Appellant, witnesses told Officer Sandoval that Appellant had placed two pistols in his pickup truck bed. From his lawful position on the street, Officer Sandoval could see a shotgun lying on a bench in the front yard. Based on witness statements and his observations, Officer Sandoval entered the yard to secure these weapons as evidence of the homicide and to protect himself and the public.

Importantly, Appellant had taken no steps to establish privacy in his front yard— there was no fencing, gate, or signage prohibiting entry. The yard remained open to observation by neighbors and passersby. The shotgun was visible from the street, and the pistols were placed in an open pickup bed. *See Romero,* 2015 Tex. App. LEXIS 11054, at *9; *Smith,* 1991 Tex. App. LEXIS 1685, at *5. Under these circumstances, the warrantless entry into Appellant's front yard to secure the firearms was justified under the plain view doctrine. The officer was legally present on the street when he observed the shotgun; the pistols were in plain view; and the officer had reason to believe the firearms constituted evidence of the shooting.

Because we uphold the search under the plain view doctrine, we need not address whether it was also justified under another exception to the warrant requirement. We overrule Appellant's fourth issue.

Issue Five: Dismissal of Juror with Limited English Proficiency

In his next issue, Appellant contends the trial court erred by excusing Juror Desiderio Lora based on his limited English proficiency. Appellant argues the court abused its discretion because: (1) the parties' agreement was not obtained; (2) the

11

evidence was insufficient to justify replacement; and (3) the juror did not suffer from a disqualifying condition, such as a physical illness, mental condition, or an incapacitating emotional state.

Before the presentation of evidence began, the bailiff informed the trial court that Juror Lora indicated he did not speak English well and was only understanding "about half of what's being said in court." Upon questioning outside the jury's presence, Lora testified he had a fifth-grade education and difficulty understanding both the court's voir dire instructions and testimony.

The next day, the court conducted a more thorough assessment by having Lora read aloud the printed jury qualifications, who replied as follows:

> JUROR NO. 12: To be qualified to serve as a just on—No. 1, be less 18 years of age. No. 2, be a citizen—be a citizen of a state on—of the county for which as you are serving less in general. No. 3, be qualified under the constitution on the law to vote at the county in which you are to severe a junior—no—you not have anything about to be qualified to vote. Okay. And No. 4, be able to—be of the same—be of a good moral character. No. 5, be about—be about to read and write. No. 6, not have a severe—as junior for six days or in the previous six months on the court—on the court—on the county court and during the recent six months in the district court. . . . No. 7, not having be convicted of any—under indictment or other legal accusation for many more—level of felony.

This reading demonstration confirmed to the court that Lora experienced significant difficulty with English comprehension. The court found that Lora's limitations would affect his ability to understand complex legal concepts, instructions, and testimony, so it dismissed him and seated an alternate juror. Appellant's counsel complained the dismissal altered the way he exercised his peremptory challenges, and that he would

have exercised one challenge in a different way. Appellant's counsel did not explain what was changed or how he would have exercised a challenge in a different manner.

Article 33.011 of the Texas Code of Criminal Procedure provides that "[a]lternate jurors . . . shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant . . ., become or are found to be unable or disqualified to perform their duties . . . ." TEX. CODE CRIM. PROC. ANN. art. 33.011(b). One necessary prerequisite to be qualified for jury service in Texas is the ability to "read and write." TEX. GOV'T CODE ANN. § 62.102(5). Accordingly, in light of the trial record, the trial court correctly removed Juror Lora from service.

Nevertheless, even if the trial court erred by dismissing Lora, it would be harmless. The erroneous dismissal of a juror is subject to harm analysis under Rule of Appellate Procedure 44.2(b), so we must disregard the error unless it affected Appellant's substantial rights. *Scales v. State*, 380 S.W.3d 780, 786 (Tex. Crim. App. 2012) (op. on reh'g). A defendant has no right to have a particular person serve on the jury; "[t]he defendant's only substantial right is that the jurors be qualified." *McCumber v. State*, No. 09-22-00157-CR, 2024 Tex. App. LEXIS 8571, at *14 (Tex. App.—Beaumont Dec. 11, 2024, no pet.) (citing *Jones v. State*, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998)). Erroneous substitution of a juror is harmless when the alternate was subjected to the same selection process, properly sworn, and heard all the evidence. *Id.*

The record shows the alternate juror was selected through the same voir dire process as regular jurors, took the same oath, received the same instructions, and heard all the evidence. Although Appellant argued the dismissal altered his peremptory

13

challenge strategy, he did not explain how this prejudiced him. The record does not demonstrate that Appellant was deprived of a lawfully constituted jury or that any of his substantial rights were affected. We overrule this issue.

Issue Six: Admission of Nazi-Related Text Messages and Tattoo Evidence

In his final issue, Appellant challenges the trial court's admission during the punishment phase of text messages he sent to his wife from jail requesting books by Adolf Hitler and about Nazi Germany, and photographs of his tattoo displaying lightning bolt symbols associated with white supremacist ideology. He contends this evidence should have been excluded on relevancy grounds and because its admission violated his First Amendment rights.

During the punishment phase, evidence may be offered "as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a). Evidence is relevant to punishment when "it is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). Importantly, relevance at the punishment phase "is a function of policy rather than a question of logical relevance," because sentencing "is a normative process, not intrinsically factbound." *Sunbury v. State*, 88 S.W.3d 229, 233–34 (Tex. Crim. App. 2002) (adding that one of the policy goals is to provide "complete information for the jury to tailor an appropriate sentence").

14

While the First Amendment to the United States Constitution protects freedom of expression, it "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). The Texas Court of Criminal Appeals has recognized that the First Amendment is not a per se barrier to admitting evidence of protected speech when relevant to the issues in the case. *Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010) (citing *Dawson v. Delaware*, 503 U.S. 159, 161 (1992)).

Appellant presented a defense that the murder was out of character for him and resulted from stress and fear caused by Sandoval's behavior. The State countered with evidence suggesting an alternative motive: that Appellant's actions may have been influenced by white supremacist beliefs and potential animus toward Sandoval, who was Hispanic. This evidence was directly relevant to rebut Appellant's claim that he simply "snapped" when he repeatedly shot Sandoval. In closing at punishment, the State argued, without objection, as follows:

> Why was Andre Sandoval a problem? You know, you get to learn a little bit about people's character. Maybe somebody doesn't have a criminal history. Maybe they associate with white supremacists, and they don't like a Hispanic guy sitting on the curb across from him. Is that another reason why it was so easy for him to go out there and gun down Andre Sandoval? He has an admiration for Hitler and his administrations and good ideas he had. It's just white supremacy.

Appellant relies on *Dawson v. Delaware*, where the Supreme Court held that evidence of a defendant's membership in the Aryan Brotherhood was improperly admitted because there was no connection shown between this membership and the murder charged. 503 U.S. 159, 161 (1992). Unlike *Dawson*, however, the State here presented

15

evidence from which the jury could infer a possible motive for Appellant's specific actions toward Sandoval. The State did not merely introduce evidence of abstract beliefs; rather, it used the evidence to help explain the context and motivation for the crime at issue.[8]

Having found Appellant's text messages and tattoo relevant and admissible under the First Amendment, we overrule issue six. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (holding that defendant's tattoos and drawings were admissible as evidence of racial hatred and motive); *Woodward v. State*, 170 S.W.3d 726, 729–30 (Tex. App.—Waco 2005, pet. ref'd) (finding "probative value of the tattoo was compelling when defendant claimed no intent to kill and was acting under the immediate influence of sudden passion").

## Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

---

[8] Appellant relies on *Dean v. State*, 905 S.W.2d 570, 577 (Tex. Crim. App. 1995), which addresses admission of gang membership evidence. This test is inapplicable here, as the State never alleged Appellant belonged to any organization.